**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EDWARD S. JONES AND** | § | **CIVIL ACTION NO:** |
| **KATHLEEN ANN JONES** | § | |
| | § | **08:20-cv-01195** |
| *Plaintiffs* | § | |
| **v.** | § | |
| | § | |
| **THOR MOTOR COACH, INC.** | § | |
| **MIKE THOMPSON RECREATIONAL** | § | |
| **VEHICLES AND** | § | |
| **BANK OF THE WEST** | § | |
| | § | |
| *Defendants* | § | **JURY TRIAL REQUESTED** |

**COMPLAINT**

**I.    Parties**

1.      Plaintiffs, EDWARD S. JONES and KATHLEEN ANN JONES, are individuals that are now and have been at all times a citizen of Burleson County, State of Texas.

2.      Defendant, THOR MOTOR COACH, INC., hereinafter "THOR," is an Indiana corporation authorized to do and doing business in the State of Indiana with its principal place of business located at 900 CR 1, PO Box 3030, Elkhart, in, 46515, USA and is a warrantor of a Recreational Vehicle that Plaintiffs purchased and is a merchant in goods of the kind involved in this case.

THOR agent for service of process is C T Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, TX 75201-4234.

3.      Defendant, MIKE THOMPSON RECREATIONAL VEHICLES, hereinafter "MIKE THOMPSON RV SUPERSTORES," is a California corporation authorized to do and doing business

-1-

in the State of California.

MIKE THOMPSON RV SUPERSTORES's agent for service of process is Frank De Galas, 13940 Firestone Boulevard, Santa Fe Springs, California 90670.

4.     Defendant, BANK OF THE WEST, hereinafter "BANK OF THE WEST," is a California financial institution authorized to do and doing business in the State of Texas whose agent for service of process is CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## II.     Jurisdiction

5.     This court has jurisdiction over this lawsuit because the suit arises under the Magnuson-Moss Warranty Act pursuant to 15 USC § 2310(d).

This court also has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

## III.     Venue

6.     Venue is proper in this district under 28 U.S.C. §1391(a)(3) because the Defendants are subject to personal jurisdiction in this district and there is no other district where the suit may be brought.

Venue is also proper in this district under Tex. Bus. & Com. Code §17.56.  VENUE. An action brought under this subchapter may be brought:

(1)     in any county in which venue is proper under Chapter 15, Civil Practice and Remedies Code;  or

(2)     in a county in which the defendant or an authorized agent of the defendant solicited the transaction made the subject of the action at bar.

-2-

Venue is also proper in this district under Tex. Bus. & Com. Code §15.033.  Breach of Warranty By Manufacturer:

A suit for breach of warranty by a manufacturer of consumer goods may be brought in any county in which all or a substantial part of the events or omissions giving rise to the claim occurred, in the county in which the manufacturer has its principal office in this state, or in the county in which the plaintiff resided at the time the cause of action accrued.

## IV.   Conditions Precedent

7.     All conditions precedents have been performed or have occurred.

## V.   Facts

### A.   The Transaction

8.     On or about October 31, 2017, Plaintiffs purchased a new 2018 THOR HURRICANE bearing VIN 1F65F5DY1J0A07027, hereinafter "HURRICANE," from MIKE THOMPSON RV SUPERSTORES.

The "HURRICANE" was purchased primarily for Plaintiffs' personal use.  The sales contract was presented to Plaintiffs at the dealership and was executed at the dealership.

9.     The sales price of the HURRICANE was $82,998.00.  Civil or Punitive penalties for breach of warranty are recoverable under the Warranty Act, if they are recoverable for breach of warranty under the applicable state law.  See *Hughes v. Segal Enterprises, Inc.*, **627 F. Supp. 1231, 1238 (W.D. Ark. 1986);** *Chariton Vet Supply, Inc. v. Moberly Motors Co.*, **2:08CV47MLM, 2009 WL 1011500 (E.D. Mo. Apr. 15, 2009).**

10.    The contract of sale was assigned to Defendant, BANK OF THE WEST.  The contract which was assigned contained the following provision:

-3-

**"NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER."**

### B.    Implied Warranties

11.    As a result of the sale of the HURRICANE by Defendants to Plaintiffs, an implied warranty of merchantability arose in the transaction which included the guarantee that the HURRICANE would pass without objection in the trade under the contract description, and that the HURRICANE was fit for the ordinary purpose for which such motor vehicles are purchased.

12.    Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C.    Express Warranties

13.    In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the HURRICANE, occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the HURRICANE had, in fact, repaired the defects.

14.    Plaintiffs' purchase of the HURRICANE was  accompanied by express warranties offered by the Defendants, THOR and MIKE THOMPSON RV SUPERSTORES, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiffs' contract for purchase

-4-

of the HURRICANE.

15.     The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship.  Any required adjustments would also be made during the basic coverage period.  All warranty repairs and adjustments, including parts and labor, were to be made at no charge.  Additional warranties were set forth in the THOR's warranty booklet and owners manual.  Also, the Defendant, THOR, continued to agree to extended its express warranty with the Plaintiffs to cover defects that were discovered and tendered for repairs during the original factory warranty.

### D.     Actionable Conduct

16.     In fact, when delivered, the HURRICANE was defective in materials and workmanship, with such defects being discovered within the warranty periods.  Many defective conditions have occurred since purchase, including, but not limited to, the following in the Plaintiffs's own words:

> **"Our RV has been repaired over 8 times, some repair facilities had us bring the RV back 2 or three times during the time they needed it for repairs.**
>
> **The repairs are not finished as of this writing and our RV is still in the shop.**
>
> **The defects that have incurred are that the levelers still do not work properly and are still drifting down.  The levelers do not level the coach and bleed down.**
>
> **The bed controller has a ground fault ever since first trip and is still not fixed.  The refrigerator will not start properly.**
>
> **The slide-out and the slide-out controllers do not operate smoothly.  The controller has a ground fault.**

-5-

**The batteries lose charge with the power plugged in continuously.**

**Table bracket keeps breaking.**

**The awning cover on the back keeps blowing off.**

**Our RV was out of service for over 29 months, repairs not finished. Each visit has lasted for a month minimum, 6 weeks is not unusual, Texas Star RV had the RV for over 2 months, then another additional 5 weeks."**

17.    Since purchase, Plaintiffs have returned their HURRICANE to the Defendants and its authorized warranty service dealers for repairs on numerous occasions.  Despite this prolonged period during which Defendants were given the opportunity to repair the HURRICANE, the more significant and dangerous defects were not repaired.  Defendants failed to repair the subject vehicle so as to bring it into conformity with the warranties set forth herein.  From the date of its purchase, the HURRICANE, continues to this day to exhibit some or all of the non-conformities and/or defects described herein.

18.    The defects experienced by Plaintiffs with the HURRICANE substantially impaired its use, value and safety.

19.    Plaintiffs directly notified the Defendants of the defective conditions of the HURRICANE on numerous occasions.  Plaintiffs notified Defendants, THOR and MIKE THOMPSON RV SUPERSTORES, that they wanted a rescission of the sale of the HURRICANE but the Defendants have failed and refused to buy back Plaintiffs' defective HURRICANE.

**VI.    Causes of Action**

**COUNT 1:  VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE SECTION 1790 ET SEQ.**

20.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each

and every allegation contained in the preceding paragraphs.

21.     The HURRICANE is a consumer good as defined under the Song-Beverly Consumer Warranty Act.

22.     Plaintiffs are"purchasers" of consumer goods as defined under the Song-Beverly Consumer Warranty Act.

23.     Defendant, THOR,  is a "manufacturer" and "distributor" as defined under the Song-Beverly Consumer Warranty Act.

24.     The sale of the vehicle to Plaintiffs was accompanied by an express written warranty.

25.     The serious non-conformities have manifested themselves within the applicable express warranty period. The non-conformities substantially impair the use, value and or safety of the vehicle and or can cause serious bodily injury or death.

26.     Plaintiffs brought their HURRICANE to MIKE THOMPSON RV SUPERSTORES, an authorized repair facility, for repairs on numerous occasions in attempts to have the existing express warranties satisfied.

27.     Defendants have not repaired the nonconformities after a reasonable number of attempts and, as such, have failed to comply with and have breached all applicable warranty requirements.

28.     Further, the sale of the HURRICANE to Plaintiffs was accompanied by implied warranties that the vehicle was merchantable and fit for a particular use.

29.     Defendants have breached the implied warranties of merchantability and fitness for a particular use because the vehicle when sold would not pass without objection in the trade.

30.     Despite their breach of the express and implied warranties, Defendants have refused

Plaintiffs' demand for a refund or replacement.

31.     By failure of Defendants to remedy the defects as alleged above, or to issue a refund or replacement, Defendants are in breach of their obligations under the Song-Beverly Consumer Warranty Act.

32.     Defendants' continuing breach of their obligations as set forth herein is willful pursuant to the Song-Beverly Consumer Warranty Act and as such, Defendants and each of them are liable to Plaintiff for civil penalties in an amount as set forth below.

33.     Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Richard C. Dalton.  Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

**COUNT 2:  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

34.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

35.     Plaintiffs are "consumers" as defined in the DTPA.

36.     Defendants violated the following provisions of the DTPA:

   a.     §17.50(1): the use or employment of a false, misleading, or deceptive acts or practices as defined in §17.46(b)(5), §17.46(b)(6), §17.46(b)(7), §17.46(b)(9), §17.46(b)(12), §17.46(b)(13), §17.46(b)(20), §17.46(b)(22) and §17.46(b)(24) of the DTPA that were detrimentally relied upon by Plaintiffs;

   b.     §17.50(2): breach of express warranty, as defined in §2.313 of the Tex Bus

and Com Code (the warranty failed of its essential purpose and Plaintiffs were deprived of substantial value of bargain because the defect was not corrected within reasonable time);

c.    §17.50(2):  breach of the implied warranty to perform repairs in a good and workmanlike manner, as set forth in *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987);

d.    §17.50(2): breach of the implied warranty of merchantability as defined in §2.314 of the Texas Business and Commerce Code;

e.    §17.50(3): an unconscionable action or course of action as defined by §17.45(5).

37.    Because of the inherent defects in the HURRICANE, which defects existed at the time the HURRICANE was sold, although not discovered until later, the HURRICANE was and is not merchantable in that it would not pass without objection in the trade under the contract description and it was and is not fit for the ordinary purpose for which such recreational vehicles are used by consumers.   Furthermore, Defendants have failed to perform the repair work in a good and workmanlike manner.   This conduct by Defendants constitute a breach of the implied warranties described above which breach is actionable under DTPA § 17.50(a)(2).

38.    When the HURRICANE was not repaired, the express warranties that it would be and had been repaired were breached. Defendants' breach of the express warranties is actionable under DTPA § 17.50(a)(2).

39.    Defendants' statements that the HURRICANE's defects would be and had been repaired misrepresented the characteristics, uses, benefits, standard and quality of Defendants' services.   For this reason, these representations were false, misleading and deceptive as defined in DTPA § 17.46(b)(5) and (7); and this conduct is actionable under DTPA § 17.50(a)(1).

40.    The Defendants acts or practices in the selling and/or repairing of the HURRICANE

-9-

to Plaintiffs were unconscionable actions or courses of action because they took advantage of the Plaintiffs' lack of knowledge, ability, experience, or capacity of the Plaintiffs to a grossly unfair degree.  For this reason, this transaction was unconscionable and is actionable under DTPA § 17.50(a)(3).

41.     Plaintiffs further contends that Defendants' violations of the DTPA were committed knowingly and intentionally as those terms are defined in §17.45(9) and §17.45(13) of the DTPA entitling Plaintiffs to seek civil penalties in trebling of their actual damages in accordance with the DTPA.

42.     This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

43.     The limited remedy in Defendants' warranty fails of its essential purpose and deprives Plaintiffs of the substantial value of the bargain because Defendants or its authorized dealerships did not correct the defects within a reasonable time.  Tex. Bus. and Com. Code § 2.719.  Therefore, any purported limitation of remedies is ineffective.

44.     The exclusion of consequential and incidental damages is unconscionable and therefore unenforceable.

45.     This conduct was a producing and/or proximate cause of actual damages to Plaintiffs, as set forth below.

46.     Any purported waiver or limitations of rights under DTPA by the Defendants is a violation of public policy under §17.42.  WAIVERS:  PUBLIC POLICY:

> (a)     Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void;  provided, however, that a waiver is valid and enforceable if:

-10-

    (1)    the waiver is in writing and is signed by the consumer;

    (2)    the consumer is not in a significantly disparate bargaining position; and

    (3)    the consumer is represented by legal counsel in seeking or acquiring the goods or services.

(b)    A waiver under Subsection (a) is not effective if the consumer's legal counsel was directly or indirectly identified, suggested, or selected by a defendant or an agent of the defendant.

(c)    A waiver under this section must be:

    (1)    conspicuous and in bold-faced type of at least 10 points in size;

    (2)    identified by the heading "Waiver of Consumer Rights," or words of similar meaning;  and

    (3)    in substantially the following form:

"I waive my rights under the Deceptive Trade Practices-Consumer Protection Act, Section 17.41 et seq., Business & Commerce Code, a law that gives consumers special rights and protections.  After consultation with an attorney of my own selection, I voluntarily consent to this waiver.

(d)    The waiver required by Subsection (c) may be modified to waive only specified rights under this subchapter.

47.    Any purported limitation or reduction in the statute of limitations by the Defendants under DTPA must not be less than two years under the Texas Civil Practice and Remedies Code §16.070. Contractual Limitations Period:

(a)    Except as provided by Subsection (b), a person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

(b)    This section does not apply to a stipulation, contract, or agreement relating

-11-

to the sale or purchase of a business entity if a party to the stipulation, contract, or agreement pays or receives or is obligated to pay or entitled to receive consideration under the stipulation, contract, or agreement having an aggregate value of not less than $500,000.

48.    Under DTPA the statute of limitations is two years §17.565.  LIMITATION:

**All actions brought under this subchapter must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice.  The period of limitation provided in this section may be extended for a period of 180 days if the Plaintiffs proves that failure timely to commence the action was caused by the defendant's knowingly engaging in conduct solely calculated to induce the Plaintiffs to refrain from or postpone the commencement of the action.**

49.    As a direct and proximate result of Defendants' willful violation of their obligations under the DTPA, Plaintiffs have suffered actual, consequential and incidental damages, including but not limited to money expended on the purchase of the , damages associated with the inconvenience suffered as a result of the complete failure of the to operate properly, the loss of use of the during the weeks it has been in the garage for repairs, the cost of repairs related to these defects, loss of wages,  and attorneys' fees.   Plaintiffs have incurred and will continue to incur in order to protect their rights in this matter.  The precise amount of damages is unknown at the present time but is estimated to be in excess of $350,000.00 and will be shown according to proof at trial.  Attorneys' fees, loss of use, interest, and other damages continue to accrue.

50.    Under the DTPA, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevails.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to

employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continues to incur legal fees, costs and expenses in connection therewith.

**COUNT 3:    VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**

51.    Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

52.    Plaintiffs are "consumers" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

53.    Defendants, THOR and MIKE THOMPSON RV SUPERSTORES, are "suppliers" and "warrantors" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

54.    The HURRICANE is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiffs in fact purchased it wholly or primarily for personal use.

55.    The express warranties more fully described herein above pertaining to the HURRICANE, is a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

56.    The actions of the Defendants as herein above described, in failing to tender the HURRICANE to Plaintiffs free of defects and/or refusing to repair and/or replace the defective HURRICANE tendered to Plaintiffs constitute a breach of the written and implied warranties covering the HURRICANE and hence a violation of the Magnuson-Moss Warranty Act.

57.    Plaintiffs have performed all things agreed to and required of them under the purchase agreement and warranty, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

58.    As a direct and proximate result of the acts and omissions of Defendants and each of

them as set forth herein above, Plaintiffs have been damaged herein above in an amount in excess of $350,000.00 according to proof at trial.

59.     Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## COUNT 4: LENDER LIABILITY

60.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

61.     Plaintiffs are indebted to BANK OF THE WEST as a result of their purchase of the PHAETON.  Plaintiffs are entitled to assert all claims and defenses stated above against BANK OF THE WEST as a defense to the debt.

## COUNT 5:    BREACH OF EXPRESS WARRANTIES

62.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

63.     Th Defendants' advertisements and statements in written promotional and other materials contained broad claims amounting to a warranty that Plaintiffs' HURRICANE or those similarly situated were free from inherent risk of failure or latent defects.  In addition, the Defendants

-14-

issued an expressed written warranty which covered the HURRICANE and warranted that the HURRICANE, was free of defects in materials and work quality at the time of delivery.

64.     As alleged above, the Defendants breached its warranties by offering for sale and selling as safe to Plaintiffs a HURRICANE that was latently defective, unsafe, and likely to cause economic loss to Plaintiffs.

65.     In breach of the foregoing warranties, the Defendants have failed to correct said defects.

66.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 6:     BREACH OF IMPLIED WARRANTIES

67.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

68.     The Defendants impliedly warranted that Plaintiffs' HURRICANE which it designed, manufactured, and sold, were merchantable and fit and safe for their ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

69.     Any purported limitation of the duration of the implied warranties contained in the written warranties given by Defendants is unreasonable and unconscionable and void under the principles of estoppel, because Defendants knew the defects existed and might not be discovered, if at all, until the HURRICANE, had been driven for a period longer than the period of the written warranty, and Defendants willfully withheld information about the defects from Plaintiffs.

70.     Because of the defects, Plaintiffs' HURRICANE is unsafe and unfit for use and has caused economic loss to the Plaintiffs.  Therefore, the Defendants breached the implied warranty of merchantability.

71.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

**COUNT 7:     NEGLIGENCE AND NEGLIGENT MISREPRESENTATION**

72.     Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

73.     The Defendants had a duty to Plaintiffs to provide a product reasonably safe in design and manufacture, warn of dangerous defects, disclose adverse material facts when making representations of fact to Plaintiffs and correct products which are defective.

74.     The Defendants breached their duty of reasonably care and duty to disclose material adverse facts to Plaintiffs by the following acts and omissions:

a.     Failure to design and manufacture a HURRICANE that did not harbor the defects alleged herein;

b.     Failure to notify Plaintiffs of the dangerous and defective condition of the HURRICANE when Defendants knew or should have known of the dangerous and defective condition;

c.     Failure to fulfill its duty to disclose the material adverse facts as set forth above and otherwise failing to exercise due care under the circumstances; and

d.     Failure to repair the HURRICANE in accordance with the express and implied warranties.

-16-

75.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 8:     BREACH OF CONTRACT

76.     Plaintiffs re-allege and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

77.     Plaintiffs would show that the actions and/or omissions of Defendants described herein above constitute breach of the sales contract, which proximately caused the direct and consequential damages to Plaintiffs described herein below, and for which Plaintiffs hereby sues.

78.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## COUNT 9:     NEGLIGENT REPAIR

79.     Plaintiffs re-allege and incorporate herein by reference each and every allegation set forth in the preceding paragraphs.

80.     On numerous occasions, Plaintiffs delivered the HURRICANE to Defendants for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove.

81.     On each occasion that Plaintiffs returned the HURRICANE  for repairs, Plaintiffs are informed and believe, and thereupon allege, that Defendants attempted repairs of the HURRICANE

pursuant to their obligations under the express and implied warranties. Defendants owed a duty of care to Plaintiffs to perform repairs on the HURRICANE in a good and workmanlike manner within a reasonable time. These Defendants breached this duty.

82.     Defendants' attempted repairs of Plaintiffs' HURRICANE were done so negligently, carelessly, and recklessly as to substantially impair the HURRICANE 's use, value, and safety in its operation and use. At no repair attempt was Plaintiffs' HURRICANE fully and completely repaired by Defendants, nor were many of the conditions of which Plaintiffs complained fixed or significantly improved by Defendants' attempts at repair. Nonetheless, each time Plaintiffs picked up the vehicle after Defendants' repair attempts, Defendants represented to Plaintiffs that the repairs were complete, and Plaintiffs relied thereon.

83.     As a direct and proximate result of Defendants' negligent failure to repair the HURRICANE within a reasonable time or within a reasonable number of attempts, Plaintiffs were forced to drive a defective and dangerous HURRICANE in conducting their daily activities. As a further direct and proximate result of Defendants' failure to repair the HURRICANE in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the HURRICANE in for further repair attempts and to leave the HURRICANE for long periods of time at great inconvenience to themselves, and Plaintiffs sustained actual damages.

84.     The damages Plaintiffs have suffered are a direct and proximate result of Defendants' actions in this matter include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; attorney fees and damages to Plaintiffs's health and well-being in the form of emotional distress.

## VII.    Economic and Actual Damages

85.    Plaintiffs sustained the following economic and actual damages as a result of the actions and/or omissions of Defendants described herein above:

      a..    Out of pocket expenses, including but not limited to the money paid towards the note securing the vehicle;

      b.    Loss of use;

      c.    Loss of the "benefit of the bargain";

      d.    Diminished or reduced market value; and

      e.    Costs of repairs.

## VIII.    Multiple Damages

86.    The Defendants' conduct in violation of the DTPA was committed knowingly, as that term is defined in that Defendants had actual awareness of the *falsity, deception, or unfairness* of such acts, practices, and/or omissions.

87.    Plaintiffs further shows that such acts, practices, and/or omissions were committed "intentionally" in that Defendants specifically intended that Plaintiffs act in detrimental reliance on the falsity or deception or in detrimental ignorance of the unfairness.

88.    Therefore, Plaintiffs are entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code in an amount not to exceed three times the amount of their economic damages.

## IX.    Request for Rescission

89.    Plaintiffs seek the remedy of rescission of the sales contract which is requested in the following paragraph.

90.     Plaintiffs revoke their acceptance of the HURRICANE for the reason that its defects substantially impair its value to Plaintiffs and acceptance was based on Plaintiffs' reasonable reliance on the false representations and warranties of Defendants that the defects in HURRICANE would be repaired.  Accordingly, Plaintiffs seek a cancellation of the purchase transaction and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of warranty set forth above.  Plaintiffs also seeks cancellation of the debt and now offers to return the HURRICANE to Defendants.

## X.     Attorney Fees and Costs

91.     Plaintiffs are entitled to recover as part of the judgment, costs and expenses of the suit including attorney's fees based on actual time expended.  As a proximate result of the misconduct of Defendants as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Richard C. Dalton.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## XI.    Prayer

92.     For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

a.     For general, special and actual damages according to proof at trial;

b.     Rescinding the sale of the 2018 THOR HURRICANE bearing VIN 1F65F5DY1J0A07027 and returning to Plaintiffs the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

c.     For incidental and consequential damages according to proof at trial;

-20-

d.   Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges.

e.   Any diminution in value of the HURRICANE, attributable to the defects;

f.   Past and future economic losses;

g.   Prejudgment and post-judgment interest;

h.   Damages for loss of use of vehicle;

i.   Civil Penalties and/or Punitive damages;

j.   Damages for mental anguish;

k.   Attorney fees;

l.   Costs of suit, expert fees and litigation expenses; and

m   All other relief this Honorable Court deems appropriate.

## XII.   Demand for Jury Trial

93.   Plaintiffs hereby demands a trial by jury to the extent authorized by law.

RESPECTFULLY SUBMITTED:

BY: /s/ *Richard C. Dalton*

Richard C. Dalton
Texas Bar No. 24033539
Louisiana Bar No. 23017
California Bar No. 268598
P.O. Box 358
Carencro, Louisiana 70520-0358
rick@rickdaltonlaw.com
Tel. (337) 371-0375

ATTORNEY FOR PLAINTIFFS